UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 21-21053-CIV-MORENO**

PATRICE BOURGIER, individually and on
behalf of all others similarly situated,

        Plaintiff,

vs.

HARTFORD CASUALTY INSURANCE
COMPANY,

        Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Plaintiff Patrice Bourgier, individually and on behalf of all others similarly situated, filed

a class action complaint against the Defendant Hartford Casualty Insurance Company for alleged

covered losses and expenses pursuant to the policy issued to Bourgier by Hartford. The covered

losses and expenses are related to the COVID-19 pandemic. Hartford now moves to dismiss the

class action complaint for failure to state a claim because the alleged losses and expenses are not

covered by the policy. Because the losses and expenses are not covered by the policy, Hartford's

motion to dismiss is granted.

## I.      BACKGROUND

The following facts are taken from Bourgier's class action complaint, which the Court

accepts as true at this stage in the proceedings. Bourgier is the owner and operator of a full-service

salon located at 64 Southwest 10th Street in Miami, Florida. In May 2019, Bourgier obtained an

"all-risk" property insurance policy (hereinafter, the "Policy") that was issued and underwritten

by Hartford, whereby Bourgier paid monthly premiums to Hartford in exchange for Hartford's

coverage of certain losses. The Policy has a policy period of July 3, 2019 to July 3, 2020, and the insured premise listed is Bourgier's salon in Miami.

As alleged, in March 2020, Bourgier was "forced to close the salon as a result of contamination by the coronavirus and related government orders." And, while the salon re-opened after the closure orders were lifted, it "re-opened in a physically transformed, altered, and impaired state" that was "subject to the continuous and constant risk of recontamination." According to Bourgier, to address this risk, "significant necessary physical alterations" were made to the salon to "minimize, contain and mitigate coronavirus contamination." Those alterations included "restrictions of the physical use of the property and physical alterations to the property's layout," such as the "reconfiguration of seating, the installation of plexiglass shields and additional sanitizer dispensers, the enhancement of air filtration systems . . . and the more frequent replacement of equipment due to the increased rate of deterioration from increased cleaning." Bourgier alleges that these alterations have "severely impaired [Bourgier's] ability to make use of its property" and, therefore, Bourgier has "suffered a cessation, suspension and/or a slowdown of its business operations." Bourgier claims that the losses and expenses incurred in relation to the slowdown of its business operations are covered under the Policy.

Bourgier's class action complaint includes claims for declaratory judgment and breach of contract as it relates to the following Policy provisions: Business Income Coverage (Counts 1 and 2); Extra Expense Coverage (Counts 3 and 4); Civil Authority Coverage (Counts 5 and 6); and the Virus Coverage Endorsement Coverage (Counts 7 and 8). Hartford attached a copy of the Policy to its motion to dismiss. The Policy's "Special Property Coverage Form," under a heading of "Coverage," provides that "[Hartford] will pay for direct physical loss of or physical damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss." (D.E. 6-1, at 31).

"Covered Causes of Loss" are subsequently defined as "RISKS OF DIRECT PHYSICAL LOSS" unless the loss is otherwise excluded or limited by the Policy. *Id.* at 32 (emphasis in original). Under the Policy, the Business Income, Extra Expense, and Virus provisions all require direct physical loss to property before any coverage can be triggered. The Civil Authority provision requires a "Covered Cause of Loss," and, thus, only applies to "risks of direct physical loss" unless otherwise excluded or limited by the Policy.

As it relates to this threshold issue, Bourgier alleges that the losses here are covered because the coronavirus caused "direct physical loss and/or damage to the covered premises under the Policy" in the following ways: (1) the coronavirus "physically contaminated the air in and surfaces on [Bourgier's] property"; (2) "the actual and imminent physical contamination of [Bourgier's] property forced [Bourgier] to make necessary loss-mitigating physical alterations to its property," such as the "alter[ation] [of] the physical layout of its property and reduc[tion] [of] the occupancy of its property"; (3) "the actual and imminent physical contamination caused all or part of the property to be physically uninhabitable by customers at various periods between March 2020 and the date of the filing of this [c]omplaint"; and (4) "the actual and imminent physical contamination of [Bourgier's] property caused the property's physical function to be nearly eliminated, destroyed, and/or severely impaired."

Hartford moves to dismiss Bourgier's class action complaint for failure to state a claim because each Policy provision implicated in this action requires direct physical loss or damage to property, which is not present here. Notably, Hartford cites to, and Bourgier does not address, this Court's decision in *Town Kitchen LLC v. Certain Underwriters at Lloyd's, London*,—F.Supp.3d— , 2021 WL 768273, at *3-7 (S.D. Fla. Feb. 26, 2021) (rejecting the plaintiff's loss of use and physical contamination theories, finding that such theories did not constitute direct physical loss

under the policy, and dismissing case for failure to state a claim). Before addressing the parties'
arguments here, the Court will address the language in the relevant Policy provisions.

### A. Business Income Coverage

The Policy provides for "Additional Coverages," (D.E. 6-1, at 33), including "Business
Income" (*id.* at 40). The Business Income Coverage provision provides as follows: "[Hartford]
will pay for the actual loss of Business Income you sustain due to the necessary suspension of your
'operations' during the 'period of restoration'. **The suspension must be caused by direct
physical loss of or physical damage to property at the 'scheduled premises',** including personal
property in the open (or in a vehicle) within 1,000 feet of the 'scheduled premises', caused by or
resulting from a Covered Cause of Loss." (D.E. 6-1, at 40) (emphasis added).

### B. Extra Expense Coverage

Another additional coverage provision under the Policy is titled "Extra Expense." That
provision reads, in relevant part: "[Hartford] will pay reasonable and necessary Extra Expense you
incur during the 'period of restoration' **that you would not have incurred if there had been no
direct physical loss or physical damage to property at the 'scheduled premises',** including
personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a
Covered Cause of Loss." (D.E. 6-1, at 40) (emphasis added).

### C. Virus Coverage

The Policy includes a "Virus Exclusion" that provides as follows: "[Hartford] will not pay
for loss or damage caused directly or indirectly by any of the following. Such loss or damage is
excluded regardless of any other cause or event that contributes concurrently or in any sequence
to the loss: **(1)** Presence, growth, proliferation, spread or any activity of…virus. **(2)** But if…virus
results in a 'specified cause of loss' to Covered Property, [Hartford] will pay for the loss or damage

caused by that 'specified cause of loss'." (D.E. 6-1, at 132). A 'specified cause of loss' is defined as follows: "[f]ire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot of civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." *Id.* at 55. The Policy states that virus exclusion does not apply: **(1)** When...virus results from fire or lightning; or **(2)** To the extent that coverage is provided in the Additional Coverage – Limited Coverage for 'Fungi', Wet Rot, Dry Rot, Bacteria and Virus with respect to loss or damage by a cause of loss other than fire or lightning." *Id.* at 132.

The Virus Exclusion provisions are followed by a "Limited Coverage for 'Fungi', Wet Rot, Dry Rot, Bacteria and Virus" provision, which provides, in relevant part: "[Hartford] will pay for loss or damage by...virus. As used in this Limited Coverage, the term loss or damage means: **(1)** **Direct physical loss or direct physical damage to Covered Property** caused by...virus, including the cost of removal of the...virus; **(2)** The cost to tear out and replace any part of the building or other property as needed to gain access to the...virus; and **(3)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that...virus are present." (D.E. 6-1, at 133) (emphasis added). Also, under the Policy, this limited coverage "only applies when the...virus is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence." *Id.* Those causes are defined as follows: "**(1)** A 'specified cause of loss' other than fire or lightning; **(2)** Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises." *Id.*

**D. Civil Authority Coverage**

The "Civil Authority" additional coverage provision states, in relevant part: "This insurance is extended to apply to the actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority **as the direct result of a Covered Cause of Loss** to property in the immediate area of your 'scheduled premises'." (D.E. 6-1, at 41) (emphasis added). As previously noted, the Policy's "Special Property Coverage Form" provides that "[Hartford] will pay for direct physical loss of or physical damage to Covered Property...caused by or resulting from a Covered Cause of Loss." (D.E. 6-1, at 31). "Covered Causes of Loss" are subsequently defined as "RISKS OF DIRECT PHYSICAL LOSS" unless otherwise excluded or limited by the Policy. *Id.* at 32 (emphasis in original).

## II.     LEGAL STANDARD

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege a

misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal,* 129 S. Ct. at 1950.

### III.   DISCUSSION

Hartford seeks to dismiss Bourgier's class action complaint in its entirety because all the Policy provisions implicated in the alleged causes of action require direct physical loss, or risk thereof, and, according to Hartford, Bourgier has not plausibly alleged such loss in the complaint. The parties do not dispute that the Court must apply Florida law when interpreting the Policy. Under Florida law, "insurance contracts are construed in accordance with the plain language of the policies bargained for by the parties." *Auto-Owners Ins. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (citing *Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993)). "[T]he interpretation of an insurance contract, including resolution of any ambiguities contained therein, is a question of law to be decided by the court." *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 Fed. Appx. 868, 878 (11th Cir. 2020) (citing *Dahl-Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993) (citing *Sproles v. Amer. States Ins. Co.*, 578 So. 2d 482, 484 (Fla. 5th DCA 1991))). And, under Florida law, "[a] party claiming coverage (here, [Bourgier]) generally bears the burden of proof to establish that coverage exists." *Mama Jo's*, 823 Fed. Appx. at 878 (citing *U.S. Liab. Ins. Co. v. Bove*, 347 So. 2d 678, 680 (Fla. 3d DCA 1977)). While Bourgier characterizes the Policy here as "all-risk," as the panel in *Mama Jo's* and the Florida Supreme Court have noted, "an 'all-risk' policy is not an 'all loss' policy, and thus does not extend coverage for every conceivable loss." *Id.* (quoting *Sebo v. Am. Home Assurance Co.*, 208 So. 3d 694, 696-97 (Fla. 2016)).

## A. Direct Physical Loss

Here, the parties disagree as to whether Bourgier has plausibly alleged losses covered by the Policy, that is, that the losses were direct physical losses. As noted by Hartford in its motion to dismiss and reply, this Court already decided this issue in *Town Kitchen*, 2021 WL 768273, at *3-7. In that case, the Court noted that "[t]he weight of the federal court rulings is against the [p]laintiff [insureds]" and how "[f]ederal courts in Florida, Texas, Georgia, California, Alabama, West Virginia, Kansas, Iowa, New York, and Illinois have found no coverage for COVID-19 losses under th[at] insurance policy or similar ones" [where plaintiff insureds have argued that the COVID-19 losses were direct physical losses]. *Id.* at *3. The Court sided with the weight of the federal authority and rejected the plaintiff insured's loss of use and physical contamination theories. *See id. generally.* Specifically, for the loss of use theory, the Court reasoned that there was no policy coverage because the plaintiff insured "sought to recover from economic losses caused by something physical—not physical losses." *Id.* at *5. The Court also rejected the physical contamination theory "[b]ecause the 'repairs' [there] consist[ed] of the routine disinfecting with which we are all familiar and cleaning costs are not tangible, physical losses but rather economic losses." *Id.* at *7. When rejecting the plaintiff insured's coverage theories and dismissing the complaint in *Town Kitchen*, the Court relied on the Eleventh Circuit's panel decision in *Mama Jo's*, 823 Fed. Appx. 868.

In *Mama Jo's*, the plaintiff insured, Berries restaurant, filed suit against its insurer when it denied a claim for cleaning and painting expenses and for business interruption coverage resulting from debris and dust from nearby road construction that entered the restaurant. 823 Fed. Appx. at 872. The district court granted the defendant insurer's motion for summary judgment "based upon the conclusion that [p]laintiff failed to establish that it suffered a direct physical loss that would

trigger coverage." *Id.* at 870. On appeal, the Eleventh Circuit noted that the policy's Building and Personal Property Coverage Form and the Business Income Coverage Form both required direct physical loss to covered property. *Id.* at 879.[1] The panel affirmed the district court's order granting the insurer's motion for summary judgment, reasoning that "under Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Id.* (citing *Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017)); *Vasquez v. Citizens Prop. Ins. Corp.*, 304 So. 3d 1280, 1284 (Fla. 3d DCA 2020). In doing so, the panel relied on two decisions from Florida's District Court of Appeals for the Third District, which required that "the damage be actual" for a direct physical loss. *Mama Jo's*, 823 Fed. Appx. 879 (citing *Vazquez*, 304 So. 3d at 1284) ("A 'loss' is the diminution of value of something, and in this case, the 'something' is the insureds' house or personal property. Loss, Black's law Dictionary (10th ed. 2014). 'Direct' and 'physical' modify loss and impose the requirement that the damage be actual.'") (citing *Maspons*, 211 So. 3d at 1069).

Here, Bourgier has failed to plausibly allege a direct physical loss covered by the Policy under Florida law. Like the plaintiff insured in *Town Kitchen*, Bourgier advances loss of use and physical contamination theories, which the Court rejected in *Town Kitchen*. 2021 WL 768273, at *3-7. For example, Bourgier alleges that "[t]he presence of the coronavirus caused direct physical loss and/or damage to the covered premises under the Policy," such as the physical contamination of the premises with coronavirus, and that "actual and physical contamination" has "forced

---

[1] More specifically, in *Mama Jo's*, "the policy's Building and Personal Property Coverage Form state[d] that [the insurer] 'will pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss" and the "Business Income Coverage Form provide[d] that [the insurer] will pay 'the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration[,]' with the "suspension [] be[ing] caused by direct physical loss of or damage to' covered property." *Mama Jo's*, 823 Fed. Appx. at 879 (internal citations omitted).

[Bourgier] to make necessary loss-mitigating physical alterations to [the] property," including "altering the physical layout of [the] property and reducing the occupancy of [the] property." (D.E. 1 ¶ 70 b.). "[C]oronavirus particle damage lungs, they do not damage buildings," *Town Kitchen,* 2021 WL 768273, at \*4, and that physical contamination can be eliminated with "Lysol and a rag," *id.* at \*7. This conclusion remains the same. Moreover, even if Bourgier's salon physically changed, that is, Bourgier moved the salon's furniture around, added hand sanitizer stations and plexiglass, or enhanced the air filtration system, it still cannot be said that there was actual damage to the property. *Mama Jo's*. 823 Fed. Appx. at 879 (citing *Maspons*, 211 So. 3d at 1069); *Valdez*, 304 So. 3d at 1284.

Bourgier relies on *In re Society Insurance* and the district court's rationale there for why Bourgier's losses should be considered direct physical losses under the Policy. *In re Society Insurance Co. COVID-19 Business Interruption Protection Insurance Litigation,*—F.Supp.3d—, 2021 WL 679109, at \*8 (N.D. Ill. Feb. 22, 2021). In that multi-district litigation involving COVID-19 business interruption coverage, Judge Chang noted the "or" disjunctive in the "operative text" in the policy there, "direct physical loss of or damage to covered property," and how "[t]he disjunctive [] in that phrase meant that 'physical loss' must cover something different from 'physical damage.'" *Id.* However, the Court already disagreed with Judge Chang's reasoning in *Town Kitchen*:

> Judge Chang endorsed the loss of use theory because 'Plaintiffs cannot use (or cannot fully use) the physical space.' [Judge Chang] went on to reason that the loss is 'physical' because '[i]f the restaurant could expand its *physical* space, then the restaurant could serve more guests and the loss would be mitigated (at least in part).' Judge Chang's opinion does not address any Eleventh Circuit authorities, and this Court respectfully disagrees that such loss would be considered 'physical' under [] Florida and Eleventh Circuit law.

*See Town Kitchen*, 2021 WL 768273, at \*7 (emphasis in original) (internal citations omitted).

Bourgier does not address the Third District Court of Appeals cases cited by the panel in *Mama Jo's*[2]; instead, Bourgier relies on a case from the Florida District Court of Appeals for the First District, *Azalea,* for the proposition that Florida courts "have long rejected a structural damage requirement for coverage under all-risk policies." (D.E. 9, at 12) (citing *Azalea, Ltd. v. American States Ins. Co.*, 656 So. 2d 600, 602 (Fla. 1st DCA 1995)).

In *Azalea*, the insured appealed from a final judgment entered in favor of the insurer, with the issue on appeal being "whether the trial court properly found that [the insured] was not entitled to recovery under its insurance policy because its loss d[id] not constitute direct physical loss to the sewage treatment building." *Azalea*, 656 So. 2d at 600. The insured there was the operator of a mobile home park in Jacksonville that had "its own sewage treatment facility on site." *Id.* The applicable policy provisions provided that the insurer would pay for "direct physical loss of or damage to [the insured's sewage treatment building]"… caused by or resulting from any Covered Cause of Loss and "[t]he covered cause of loss include[d] losses caused by vandalism." *Id.* at 600-01. While the policy was in effect, "an unknown substance was dumped into the on-site sewage treatment facility" and "[t]he city of Jacksonville prohibited [the insured] from utilizing the sewage treatment facility until the unknown substance was determined to be nonhazardous and until the city reapproved the facility for operation." *Id.* at 601. The facility was "shut down" as a result. *Id.* While the unknown substance was being tested, "the chemical residue from the dumped substance adhered to the interior and caused the destruction of a bacteria colony which was part of the sewage treatment process." *Id.* This required the insured "to completely drain the entire system, steam clean the entire interior of the sewage treatment plan by power steam, and by hand chiseling remove this chemical residue." *Id.* In reversing the trial court's ruling as to direct physical loss,

---

[2] 823 Fed. Appx. at 879 (citing *Maspons*, 211 So. 3d at 1069); *Valdez*, 304 So. 3d at 1284.

the *Azalea* court reasoned that "[t]he only evidence presented demonstrate[d] that the bacteria colony is an integral part of the sewage treatment facility," "[t]he colony was specifically attached to and became part of the treatment facility structure," and "[t]he facility could not operate or exist unless this colony was replaced." *Azalea*, 656 So. 2d at 602.

*Azalea* is distinguishable from our case. First, in *Azalea*, the Florida District Court of Appeals for the First District reasoned that "[t]he facility could not operate or exist unless [the bacteria] colony was replaced." *Azalea*, 656 So. 2d at 602. Here, Bourgier does not allege that the salon was completely shut down, on the contrary, Bourgier alleges that physical alterations were made to the salon "minimize, contain and mitigate coronavirus contamination" instead of closing up shop. Second, the *Azalea* court noted how the unknown substance eliminated the bacteria colony that was "an integral part of the sewage treatment facility" and became part of the structure. *Id.* at 602. Here, the coronavirus did not eliminate any integral part of the salon. At best, Bourgier alleges that "cleaning protocols have themselves led to property loss and damage, as the use of harsher cleaning agents necessary to temporarily decontaminate surfaces exposed to the coronavirus have led those surfaces to deteriorate more rapidly." (D.E. 1 ¶ 73 c.). But the harsher cleaning agents used by Bourgier caused that damage, not the coronavirus.

Like the plaintiff insured in *Town Kitchen*, Bourgier cites to other cases where plaintiff insureds were victorious on this issue, *see* D.E. 9, at 15, but the same result as in *Town Kitchen* follows here because "[Bourgier's] cases come from outside of this jurisdiction" and those cases still do not "outweigh" the majority of federal courts' stance on the issue. 2021 WL 768273 at *5.[3]

---

[3] According to Penn Law's Covid Coverage Litigation Tracker, as it relates to Trial Court Rulings on the Merits in Business Interruption Cases in federal court, there have been 320 cases dismissed with prejudice, 33 cases dismissed without prejudice, 5 partial dismissals with prejudice, and 22 where motions to dismiss were denied. In state court, there have been 57 dismissals with prejudice, 9 dismissals without prejudice, 1 partial dismissal with prejudice, and 29 motions to dismiss denied. https://cclt.law.upenn.edu/judicial-rulings/ (last visited August 5, 2021).

Other courts in this district have ruled similarly on this issue. *See Carrot Love, LLC v. Aspen Specialty Ins. Co.*,—F.Supp.3d—, 2021 WL 124416, at *2 (S.D. Fla. Jan. 13, 2021) (Scola, J.) ("As other Courts in this district have noted when considering similar lawsuits, the [p]laintiff here simply does not provide the Court with adequate reason to depart from the nearly unanimous view that COVID-19 does not cause direct physical loss or damage to a property sufficient to trigger coverage under the policy at issue here."); *Mena Catering, Inc. v. Scottsdale Ins. Co.*, — F.Supp.3d—, 2021 WL 86777, at *7 (S.D. Fla. Jan. 11, 2021) (Bloom, J.) ("There is no 'direct physical loss' where the alleged harm consists of the mere presence of the virus on the physical structure of the premises.") (citing *Mama Jo's*, 823 Fed. Appx. at 879); *Sun Cuisine, LLC v. Certain Underwriters at Lloyd's London*, Case No.: 1:20-cv-21827, 2020 WL 7699672, at *4 (S.D. Fla. Dec. 28, 2020) (Gayles, J.) ("Plaintiffs' allegations provide the Court no reason to deviate from the prevailing consensus in this Circuit and others regarding business interruption claims arising from the COVID-19 pandemic."); *El Novillo Restaurant v. Certtain Underwriters at Lloyd's, London,* 505 F.Supp.3d 1343, 1350 (S.D. Fla. 2020) (Ungaro, J.) (collecting cases where "federal district courts throughout the country have dismissed substantially similar COVID-19 related lawsuits for failing to state a claim for business income coverage" where the policy required "direct physical loss of or damage to property"); *Mignonette Miami, LLC v. Tokio Marine Specialty Ins. Co.*, Case No. 20-23924, 2021 WL 2661152, at *3 (S.D. Fla. June 29, 2021) (King, J.) (dismissing COVID-19 insurance claim because the plaintiff insured "d[id] not allege any actual, concrete damage to property" and "[t]he potential existence of COVID-19 at the restaurant d[id] not suffice"); *Café Int'l Holding Co. LLC v. Westchester Surplus Lines Ins. Co.*,— F.Supp.3d—, 2021 WL 1803805, at *1 (S.D. Fla. May 4, 2021) (Goodman, J.) (consent case) (dismissing case where policy required "direct physical loss of or damage to [the insured premise]"

and plaintiff insured's "succinct and conclusory allegations about COVID-19-caused damage []
[were] insufficient to escape the great weight of legal authority holding that physical damage is
required").

Thus, given that the Business Income, Extra Expense, Civil Authority, and Virus policy
provisions all require "direct physical loss" for coverage, Hartford's motion to dismiss is granted
because Bourgier has failed to plausibly allege such a loss. *Mama Jo's*. 823 Fed. Appx. at 879
(citing *Maspons*, 211 So. 3d at 1069); *Valdez*, 304 So. 3d at 1284.

Alternatively, even if Bourgier has plausibly alleged a direct physical loss, there are other
grounds for dismissing Bourgier's claims based on the plain language of the Civil Authority and
Virus-related provisions.

### B. Civil Authority Provision

In the response in opposition, Bourgier states that "[a]lthough the Civil Authority coverage
also implicates the 'physical loss' question addressed in the preceding section, there are
independent points that must be addressed here." (D.E. 9, at 18). In its motion to dismiss, Hartford
contends that Bourgier has failed to show Civil Authority coverage was triggered here because
such coverage requires (1) a Covered Cause of Loss, i.e., direct physical loss to property in the
immediate area of its premises; (2) that access to its premises was specifically prohibited by the
order of civil authority; and (3) the order of civil authority was taken directly in response to the
physical damage or loss. The Court agrees with Hartford.

The "Civil Authority" provision states, in relevant part: "This insurance is extended to
apply to the actual loss of Business Income you sustain when access to your 'scheduled premises'
is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of
Loss to property in the immediate area of your 'scheduled premises'." (D.E. 6-1, at 41).

**1. Direct Physical Loss to Property in the Immediate Area of Scheduled Premises**

Dismissal is also appropriate of Bourgier's Civil Authority coverage claim because Bourgier has failed to allege a "direct physical loss" to "property in the immediate area of [the] 'scheduled premises.'" *See Café La Trova LLC v. Aspen Specialty Ins. Co.*,—F.Supp.3d—, 2021 WL 602585, at *10 (S.D. Fla. Feb. 16, 2021) (Altonaga, J.) ("As several courts have found, there is no civil authority coverage in the absence of physical damage to surrounding properties.") (collecting cases).

**2. Access Specifically Prohibited**

On this issue, Hartford points to the policy's language requiring that "access to your 'scheduled premises' [be] specifically prohibited by order of a civil authority." Courts in this district have found that the mere restriction of access to an insured's covered premise did not trigger civil authority coverage. *See Café La Trova LLC,* 2021 WL 602585, at *11 ("'Merely restricting access' to [p]laintiff's restaurant without completely prohibiting access, 'does not trigger coverage under the Policy's Civil Authority provision."); *El Novillo Restaurant*, 505 F.Supp.3d at 1351. In *Nahmad*, the district court found that there was no civil authority coverage because "'access' to the 'scheduled premises' was [not] 'specifically prohibited by order of a civil authority[,]'" as required by the policy. *Raymond H Nahmad DDS PA v. Hartford Casualty Ins. Co.*, 499 F.Supp.3d 1178, 1188 (S.D. Fla. 2020). In dismissing the plaintiff insureds' breach of contract claim, the district court reasoned that the "[p]laintiffs d[id] not allege that they were prohibited from accessing the premises." *Id.*

Here, there was not a complete prohibition of access, and, like the plaintiff insureds in *Nahmad*, Bourgier has failed to allege that she was "prohibited from accessing the premises," 499 F.Supp.3d at 1188. In the response in opposition, Bourgier does not address *Nahmad* specifically

and instead states that "to the extent [Hartford's] cases read Civil Authority provisions to require a *complete* prohibition on *any* access to the insured property, [Bourgier] respectfully submits that they were wrongly decided." (D.E. 9, at 18) (emphasis in original). In making such an argument, Bourgier directs the Court to the policy's language, which states that access to the premises be "prohibited," and the Policy does not characterize such a prohibition as a complete prohibition on access.

Even assuming *arguendo* that Bourgier has plausibly alleged direct physical loss as required by the Policy and that there was direct physical loss to property in the immediate area of Bourgier's beauty salon, there is no civil authority coverage here because Bourgier's "access to [the] [beauty salon]" was not "specifically prohibited by order of a civil authority." *See Café La Trova LLC,* 2021 WL 602585, at *11; *El Novillo Restaurant,* 505 F.Supp.3d at 1351; *Nahmad,* 499 F. Supp.3d at 1188; *see also Café Int'l Holding Co. LLC,* 2021 WL 1803805, at *13.

### 3.   Civil Authority Orders issued "as the direct result" of Direct Physical Loss

The parties disagree as to whether the civil authority orders here were issued "as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises'." (D.E. 6-1, at 41).   In its motion to dismiss, Hartford cites cases for the proposition as that "Florida courts have rejected similar civil authority claims because the COVID-19 orders were aimed at preventing a future harm to people, not existing property loss or damage." (D.E. 6, at 13-14). *See Pane Rustica, Inc. v. Greenwich Ins. Co.*, Case No. 8:20-cv-1783-KKM-AAS, 2021 WL 1087219, at *4 (M.D. Fla. Mar. 22, 2021) (noting that government orders shut down restaurants "for the same reason: a government response to stop the spread of the COVID-19 virus"); *see also Digital Age Marketing Grp., Inc. v. Sentinel Ins. Co. Ltd.*, —F.Supp.3d—, 2021 WL 80535, at *6 (S.D. Fla. Jan. 8, 2021) ("Plaintiff has not sufficiently alleged that a Covered Cause of Loss to property

under the Policy, not excluded by the 'Fungi, Wet Rot, Dry Rot, Bacteria And Virus' Exclusion, directly precipitated the orders of a civil authority upon which Plaintiff claims coverage under the Policy was triggered."). Bourgier does not address these cases, but rather maintains "to the extent that public health risks animated the government orders, those risks *included* risks that coronavirus contaminated properties pose to public health" and that "there is nothing in the Policy suggesting that a government order with *multiple* objectives—*e.g.*, responding to dangerous physical conditions *and* containing a public health emergency—cannot give rise to coverage." (D.E. 9, at 19) (emphasis in original). Given the authorities presented, the Court finds that, even if the preceding policy requirements were met, there is no civil authority coverage because Bourgier has failed to show that the civil authority orders were issued "as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises'." (D.E. 6-1, at 41).

### C. The Virus-related Provisions

Hartford maintains that a "Virus Exclusion" bars coverage for all of Bourgier's claims. On the other hand, Bourgier characterizes the provision as a "Virus Coverage Endorsement" and maintains that it provides coverage for the losses here.

For ease of reference, the Court recounts the relevant language in the virus-related provisions here. First, the Policy includes a "Virus Exclusion," which provides as follows:

### i.    "Fungi", Wet Rot, Dry Rot, Bacteria And Virus

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

(1) Presence, growth, proliferation, spread or any activity of the . . . virus.

(2) But if . . . virus results in a "specified cause of loss" to Covered Property, we will pay for the loss or damage caused by that "specified cause of loss".[4]

This exclusion does not apply:

(1) When . . . virus results from fire or lightning; or

(2) To the extent that coverage is provided in the Additional Coverage limited Coverage for . . . Virus with respect to loss or damage by a cause of loss other than fire or lightning.

(D.E. 6-1, at 132).

That Additional Coverage, under subsection **B**. and titled "**1.** Limited Coverage for 'Fungi',

Wet Rot, Dry Rot, Bacteria and Virus," provides as follows:

**a.** The coverage described in **1.b.** below only applies when the . . . virus is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

(1) A "specified cause of loss" other than fire or lightning;

(2) Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises.

**b.** [Hartford] will pay for loss or damage by…virus. As used in this Limited Coverage, the term loss or damage means: **(1)** Direct physical loss or direct physical damage to Covered Property caused by…virus, including the cost of removal of the…virus; **(2)** The cost to tear out and replace any part of the building or other property as needed to gain access to the…virus; and **(3)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that…virus are present.

(D.E. 6-1, at 133).

In its motion to dismiss, Hartford points to 31 federal courts to date that have ruled that the

very same virus exclusions in the Policy at issue here precludes coverage for coronavirus-related

---

[4] As noted, the Policy defines a "Specified Cause of Loss" as follows: "Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." (D.E. 6-1, at 55).

claims. (D.E. 6, at 15). Those federal courts include decisions from this district. *See Digital Age Marketing Grp., Inc.,* 2021 WL 80535, at \*3-4; *Nahmad*, 499 F. Supp.3d 1188-89. In *Digital Age Marketing*, the district court provided a sound interpretation of the policy and its virus-related provisions as applied in cases with this policy language:

> The unambiguous, reasonable reading of these provisions taken together is that the policy does not cover direct or indirect damage caused by a virus unless the virus is the result of fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objections; weight of snow, ice, sleet; or water damage. Here, Plaintiff's claims for relief seek coverage caused directly or indirectly by a virus which the complaint does not allege was the result of a cause that would bring Plaintiff's claims within the coverage provided by the Policy. The Policy is not ambiguous merely because coverage and exclusions related to virus coverage are contained within an endorsement, nor because the endorsement contains provisions outlining both limited coverage and exclusions from coverage. As indicated above, the Court finds no ambiguity in the policy.

2021 WL 80535, at \*4. The same result follows here. Hence, even if Bourgier's complaint plausibly alleged a direct physical loss covered under the Policy, any coverage for such losses are excluded by the Policy unless the virus is the result of **(1)** fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage; or **(2)** an Equipment Breakdown Accident [that] occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises. Because Bourgier has not shown that coverage exists under the Policy's limited grant of coverage for virus-related loss or damage, the losses here, caused directly or indirectly by COVID-19, are not covered base on the Policy's "Virus Exclusion[]." *Mama Jo's*, 823 Fed. Appx. at 878.

Lastly, in the response and reply, the parties offer dueling interpretations as to whether subsection **f.**, the "Time Element Provision," provides a standalone grant of coverage for the loss

here.[5] The Court agrees with Hartford's reading of the Policy—**B.1.f.** is not a standalone grant of coverage, rather, before coverage can be triggered, the requirements of other subparts in that section must be met, e.g., **B.1.a. and B.1.b.** Given the Policy's language, **B.1.f.** cannot be read in isolation. *Q Clothier New Orleans LLC v. Twin City Fire Insurance Company*, —F.Supp.3d—, 2021 WL 1600247, at *9 (E.D. La. Apr. 23, 2021) is instructive. That case also involved a **B.1.f.** Time Element Coverage provision. *Id.* The district court noted that "'Time Element Coverage' is 'a term of art in the insurance industry referring to coverages measured in time, including Busines Interruption and Civil Authority coverages. For example, 'business interruption coverages are described as time element coverages because they cover the insured's lost income for a period of time, variously known as 'period of restoration'[.]" *See id.* (internal citations omitted). The district court found that "[w]hen read within the context of the Limited Virus Coverage and Virus Exclusion, Time Element Coverage is triggered only where the other requirements for Limited Virus Coverage are satisfied," and, in that case, the plaintiff insured "d[id] not allege that COVID was a result of a specified cause of loss or equipment breakdown nor does it establish a direct

---

[5] That provision states as follows: "The following applies only if a Time Element Coverage applies to the "scheduled premises" and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Time Element Coverage.

(1) If the loss which resulted in . . . virus does not in itself necessitate a suspension of 'operations', but such suspension is necessary due to loss or damage to property caused by . . . virus, then our payment under the Time Element Coverage is limited to the amount of loss and expense sustained in a period of not more than 30 days unless another number of days is indicated in the Declarations. The days need not be consecutive. If a covered suspension of 'operations' was caused by . . . virus, but remediation of . . . virus prolongs the 'period of restoration', we will pay for loss and expense sustained during the delay (regardless of when such a delay occurs during the 'period of restoration'), but such coverage is limited to 30 days unless another number of days is indicated in the Declarations. The days need not be consecutive."

(D.E. 6-1, at 134).

physical loss as previously discussed." *Id.* at *10. The district court also noted "[i]n cases beyond this circuit wherein claimants similarly claimed Time Element Coverage, courts have declined to follow the *Independence Barbershop* court and found that the Time Element clause does not provide standalone coverage." *Id.* at *9 (collecting cases).[6]

Applying *Clothier* and well-settled contract principles here, **B.1.f.** and its Time Coverage Element should not be read in isolation and such coverage is not triggered when it is otherwise excluded. (D.E. 6-1, at 132-133). And, given that Bourgier has failed to show that the Policy's limited grant of virus coverage applies here, dismissal of Bourgier's claims under the "Virus Exclusion" is appropriate.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons, it is

**ADJUDGED** that

1. Hartford's Motion to Dismiss **(D.E. 6)** is **GRANTED.**

2. Bourgier's Class Action Complaint **(D.E. 1)** is **DISMISSED with prejudice.**

3. The Clerk is directed to close this case and all pending motions are **DENIED as MOOT.**

DONE AND ORDERED in Chambers at Miami, Florida, this ⁄⁄ of August 2021.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record

---

[6] Bourgier cites to *Independence Barbershop, LLC v. Twin City Fire Insurance Company*, 499 F.Supp.3d 331, 336-37 (W.D. Tex. 2020). Yet, as recognized by the district court in *Q Clothier*, district courts have noted the shortcomings of the district court's decision in *Independence Barbershop*: "[T]he [*Independence Barbershop*] court . . . made no attempt to reconcile the language in sentence (1) of section B.1.f. with the rest of the policy. Instead, it summarily concluded that the provision was not limited by the more specific language of section B.1.a. The undersigned is not persuaded by this non-binding decision since it fails to apply well-established rules of contract interpretation." *Q Clothier New Orleans LLC*, 2021 WL 1600247, at *10 (citing *J&H Lanmark, Inc. v. Twin City Ins. Co.*, Case No. 5: 20-333-DCR, 2021 WL 922057, at *5 (E.D. Ky. Mar. 10, 2021)).